PEOPLE'S SAVINGS BANK, Appellee, v. EVA E. PHILPOTT et al., Appellants.

CONTRACTS: Consideration—Assumption of Subscription. An agreement by a purchaser of real estate to pay, as part of the purchase price, a subscription made by one holding an interest in the property, in order to meet the cost of opening a street, is supported by a sufficient consideration.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF, Judge.

TUESDAY, NOVEMBER 21, 1916.

ACTION to recover a subscription, originally made by Charles Philpott, deceased, for the purpose of opening a street in the city of Des Moines. It is claimed that Carpenter assumed, and agreed to pay, this subscription. Carpenter denied that he agreed to pay the subscription, and further alleged that any such agreement was without consideration and void. On the issues joined, the case was tried to the court, without a jury, resulting in a judgment finding both defendants liable; but Carpenter's liability, as between him and Philpott, was declared primary. Carpenter appeals.—*Affirmed.*

*John McLennan* and *M. R. Hammer, Jr.,* for appellants.

*Coffin & Hippee* and *Nourse & Nourse,* for appellee.

DEEMER, J.—Charles H. Philpott is now dead, and his executrix appears in this case, as substituted defendant. We shall speak of Philpott as if he were alive; and, save where otherwise indicated, will refer to him as defendant Philpott.

CONTRACTS: consideration: assumption of subscription.

Sometime in August, of the year 1909, Philpott obtained, from one Atwater Cook, the then owner thereof, an option to purchase or sell a tract of land in the city of Des Moines. Thereafter, and about November 17, 1909, Philpott and defendant Carpenter entered into a written contract, whereby Carpenter agreed to purchase the property from Philpott. Thereafter, arrangements were made so that Carpenter took title to the property, directly from Cook, the holder of the legal title. After Philpott obtained his option on the premises, he, with others, signed the subscription contract in suit, wherein he agreed, on certain conditions, to pay the plaintiff, as trustee, the sum of $3 per front foot, of the property purchased by him from Cook, for the purpose of raising funds for opening what is known as Locust Street. The street was finally opened, pursuant to the contract; although this was not done until the year 1911, as we understand it. In the written agreement between Philpott and Carpenter, which was an ordinary executory contract of sale, Carpenter expressly agreed "to pay the $3 per front foot, in case Locust Street is extended to the Eighteenth Street bridge, as contemplated, first party having previously agreed to pay same with other property owners." This was a part of the consideration for the agreement, and is expressly so stated. Philpott's option contract with Cook, the owner, gave him the right to buy or sell the property, on named conditions, until April 1, 1910, and the price was fixed at $7,500. Philpott paid $500 in cash for the option, which, as we have observed, was an option to either buy or sell. Carpenter agreed to pay $8,925 to Philpott for the property, and, in addition thereto, the subscription made by Philpott. On December 17, 1909, Carpenter and Atwater Cook entered

into a contract for the purchase and sale of the same property, the consideration named therein being $6,500. This contract said nothing about the subscription contract. On the same day, the following statement was entered upon the original contract between Philpott and Carpenter:

"This contract is hereby canceled by Atwater Cook, giving contract with O. O. Carpenter, for within property with .balance due of $6,500 from December 17, 1909.

Charles H. Philpott."

Thereafter, Carpenter paid part of the purchase price for the property, received a deed for the same, and gave a mortgage back for the remainder of the purchase price.

The testimony shows, or, at least, the trial judge was authorized to find, that this contract between Atwater Cook and Carpenter was not intended as a complete substitution for the one between Carpenter and Philpott, but that it was so made because Cook still held the title, and Philpott simply had the option to buy. or sell the land, having, at most, but a mere equity in the land. But the option contract and the original contract between Carpenter and Philpott were both recognized to this extent: Cook was to have the price which Philpott agreed to pay in his option, and Philpott was to receive the difference between this amount and what Carpenter agreed to pay him (Philpott). There was no change whatever in the contract price which Carpenter was to pay Philpott. The subsequent contract was made between Cook and Carpenter, simply because it was to run for a number of years, and Cook held the title; and the trial judge was justified in finding that it was not intended by the parties that it should be a complete substitute for the original contract between Carpenter and Philpott. It is very clear that there was a consideration for Carpenter's original agreement to pay the subscription theretofore made by Philpott. It was a part of the consideration for the purchase of the land from

Philpott, and was not a mere agreement to answer for the debt of another. It was a direct obligation on the part of Carpenter, and for his benefit. He is liable therefor, unless the contract was fully canceled, and another substituted in its place. This latter was a question of fact; and we think the court was correct in holding that this was not a complete substitution, but an additional contract, in recognition of the original one, and not an entirely new arrangement between Carpenter and Cook. The new one was made for the reasons already stated, and it did not destroy the original promise, on the part of Carpenter, to pay Philpott for the property. It was subsequent to the making of all the contracts recognized by the parties, and payments made in accord therewith. Much of Carpenter's testimony, given on the witness stand, was not admissible, because it related to personal transactions with Philpott, who was dead at the time this testimony was given. It was inadmissible, under Section 4604, Code, 1897. However, there is enough other testimony to justify the finding of the trial court. The facts being found, the legal problems are not difficult of solution. No citation of authorities is made in their support.

The judgment seems to be correct, and it is—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.